## OLIVER COE *v.* DUDLEY P. HALL.

*Floating Timber. Mill-dam. Remedy.*

The owner of a mill-dam across Passumpsic River in the town of Burke, which was injured by the floating of timber over it by the defendant, Dudley P. Hall, is not, either by reason of having a remedy under chapter 101 of the General Statutes, or on account of any provision for a different remedy under section 2 of No. 146 of the Acts of 1852, deprived of maintaining an action on the case for the damage to the mill-dam.

ACTION on the case. Heard on demurrer to the defendant's plea in bar, at the June term, 1868, STEELE, J., presiding. Plea held insufficient, and judgment rendered for the plaintiff. Excep-

tions by the defendant. If the plaintiff should prevail in the supreme court, the cause was to be remanded, with leave to the defendant to replead upon the usual terms.

The following is the declaration:

"In a plea of the case, whereupon the plaintiff declares and says that he is, and has been for the last six years, the owner (and he and those under whom he owns the right have been for more than fifty years) of a mill-privilege, and a mill-dam built across Passumpsic River in the town of Burke, and of a saw-mill built on said dam, and has been all that time in the possession and use of the same for the purpose of sawing lumber for customers and making gains thereby; and the defendant has, during all that time, been engaged in the lumber business, and interested in saw-mills below the plaintiff's, on the same stream, and, on divers days and times between the 15th day of May, 1861, and the day of the date of this writ, and more especially at times of high water in spring, has run, driven and floated down said stream, from above the plaintiff's said mill, a large number of mill-logs at a single run or drive upon and over the plaintiff's said dam, thereby creating such force and pressure upon and against the plaintiff's dam as to settle, break, and carry away parts thereof, and render the plaintiff's mill of no use or benefit; and these injuries have been often repeated in the manner aforesaid, during the time aforesaid, and the plaintiff has been compelled to let his mill be idle, and to expend money in repair of the dam to the amount of one hundred dollars, and until these injuries, so often repeated, have wholly destroyed and rendered said dam useless and good for nothing; and the same can not be repaired or rebuilt without great expense, and expense unwarrantable, and disproportionate to all benefit to be derived from running said mill if the dam was rebuilt or repaired. Whereby the plaintiff has not only been deprived of the use of his said mill during the time aforesaid, and been compelled to expend a large sum in the repair of the dam, but has wholly lost said dam, and his said mill has been rendered of no value, all which is to the damage of the plaintiff, five hundred dollars."

The following is the plea in bar:

"And the said defendant, Dudley P. Hall, by his attorneys, George C. & George W. Cahoon, comes and defends the wrong and injury when, etc., and says that the said plaintiff ought not to have and maintain his aforesaid action thereof against him, the said defendant, because he says that the legislature of the state of Vermont, at its session in 1852, passed the following act:

'AN ACT TO AUTHORIZE THE REMOVAL OF OBSTRUCTIONS FROM PASSUMPSIC RIVER.

'*It is hereby enacted by the General Assembly of the State of Vermont, as follows:*

'SEC. 1. Dudley P. Hall, of Burke, and his assigns, for the purposes of widening, deepening and straightening Passumpsic River, and removing obstructions therefrom, shall have the power of entering upon the bed of said river in any part thereof between the north line of the town of Newark and a point one mile south of where Moose River empties into said Passumpsic River, and may dig, cleanse, and remove all obstructions from, the channel, bars and banks of said river, and may make booms in said river, and slips in any dams in said river, but shall do no injury or damage to any dam.

'SEC. 2. All and every injury or damage which may be done by the said Hall or his assigns to lands or property of any person or persons in carrying the object of the foregoing section into effect, shall be paid by the said Hall or his assigns; and any person or persons whose property may sustain such injury, may prefer a petition to the county court for the county of Caledonia, at any regular term thereof, setting forth the injury alleged to be sustained, and praying for the redress provided for by this act, a copy of which petition shall be served on said Hall or his assigns in the same manner that writs of summons are now by law served, at least twelve days before the session of said court to which said petition is preferred; and said court may, in their discretion, appoint a committee of three disinterested men to view said premises, and hear the parties, and make their report to the next term of said court, assessing said damages; and said court shall hear and consider said report, and render judgment thereon, and tax costs between the parties, in their discretion, and issue execution upon said judgment.'

And it was further provided by said act, that, whenever said Hall or his assigns had completed said improvements to the acceptance of the assistant judges of the county court for the county of Caledonia, said Hall or his assigns should be entitled to receive toll on each thousand feet of timber or lumber turned into and floated in said river, the rate to be established as provided in said act; and by section six of said act it was further enacted: 'This act shall continue in force fifteen years from and after its passage;' and by section eight of said act: 'This act shall take effect from its passage.' Approved November 9, 1852. And that said act, by an act of the legislature of the state of Vermont, approved November 9, 1866, was further extended, and to con-

tinue in force a further term of fifteen years from the expiration of said act, upon the same conditions and limitations as in said act mentioned, which said act has been in full force and effect from the date of its passage, November 9, 1852, to the present time, and in no way altered, amended or repealed. And that the defendant, at a large expense, removed obstructions from Passumpsic River between the north line of Newark and a point one mile south of the mouth of Moose River in St. Johnsbury, in pursuance of said grant of the legislature, doing as little damage as possible, for the purpose contemplated in said act, " of floating timber and lumber down said river" within the limits specified in said charter; and has floated down timber and lumber over the plaintiff's dam, it being within the charter limits of this grant, to wit: in the town of Burke, and between the north line of the town of Newark and a point one mile south of where Moose River empties into said Passumpsic River, doing as little damage as possible; and this is all and the only damage sued for by the plaintiff in his said writ, which damage, if any, the defendant has been ready to make good when assessed by a committee of the county court in the manner pointed out by the second section of said act; but the plaintiff has never preferred his petition to the county court for the county of Caledonia, at any regular term thereof, setting forth the injury alleged to be sustained, and praying for the redress provided for by said act to authorize the removal of obstructions from Passumpsic River. And this the said defendant is ready to verify. Wherefore he prays judgment if the said plaintiff ought to have and maintain his aforesaid action thereof against him, and for his costs."

*George. C. & George W. Cahoon,* for the defendant.

The present case involves the construction of an act of the legislature, passed in 1852. As the case stands, the plaintiff admits the facts set forth in the defendant's plea, for he rests his reply on a general demurrer.

It is manifest that section one gives the defendant the right, for the purposes of widening, deepening and straightening Passumpsic River, and removing obstructions therefrom, to enter the bed of said river between the points named, and to dig, cleanse, and remove all obstructions from, the channel, bars and banks of said river, and to make booms in said river, and slips in any dams in said river, but to do no damage to any dam.

Section two provides the remedy for all and every injury or damage which may be done by said Hall or his assigns to lands or property of any person in carrying the object of the foregoing section into effect. Now, are we to be confined to a construction of this statute which will at once defeat the object of the enactment? or will the court take the whole act together, and give it such construction as the legislature intended?

Sections four and five show it was intended by the act, that Hall should have the right to enter and remove obstructions, for the purpose of floating timber down said stream, and that he might, whenever he saw fit, apply to the judges of the county court to fix toll for others. We say, then, that the remedy provided by section two, is the only one the plaintiff is entitled to, and the defendant's plea in bar should prevail.

If the special act is not broad enough to afford the plaintiff an adequate remedy, and therefore the defendant's plea is bad, the demurrer of the plaintiff reaches back to the declaration, and the defendant may avail himself of a substantial defect in the declaration.

The common law remedy is allowed only when the legislature has not provided the means of relief and indemnification. *Stevens* v. *Middlesex Canal*, 12 Mass., 466. In the present case, we think the legislature has afforded a remedy under the act, and, if not, then under the statute (Gen. Sts., ch. 101, § 1, § 2, § 3, § 4).

*Thomas Bartlett*, for the plaintiff.

The plaintiff brought his action at common law to recover damages for the destruction of his dam across Passumpsic River. The defendant, by his plea in bar, seeks to turn the plaintiff over to a committee of the county court for trial, and relies upon an act of the legislature of 1852, authorizing him to remove obstructions from Passumpsic River. The title of the act explains and limits its scope. It is entitled "An act to authorize the removal of obstructions from Passumpsic River," and is a mere temporary regulation for carrying into effect the object. It would be illogical and unsound, to say that the legislature intended to take away the plaintiff's common law right of action for the destruction of

his dam by floating timber, and expressly provided that the defendant should " do no injury or damage to any dam."

That the defendant, in common with others, had a right to float timber down the Passumpsic, before the act of 1852, is admitted; and the act did not enlarge nor restrict the right, and the right will remain to him after the act shall have expired by its own limitation. It must be conceded that, had the plaintiff's dam been destroyed by the defendant before the act, or after it expired, the plaintiff's common law right of action would exist.

The plaintiff's injury was not done in " carrying the object of the act into effect" (the removing of obstructions), but was done in driving mill-logs against the plaintiff's dam, as stated in his declaration.

The plaintiff's injury does not come within the scope of the act either in letter or spirit. Had the plaintiff applied for a committee, the petition must have been dismissed; for that his remedy is at common law, and the defendant is entitled to his common law defense before the jury. But if the plaintiff's case came *squarely* within the act, it would not aid the defendant's plea in bar. For when a statute prescribes a new remedy, it is cumulative only, and leaves the plaintiff an election, unless the statute expressly or by necessary implication takes away the common law remedy.

The opinion of the court was delivered by

PECK, J. The grievance complained of in the plaintiff's declaration, is that the defendant from time to time has driven and floated down Passumpsic River a large number of logs at a single drive over the plaintiff's mill-dam, thereby creating such force and pressure as to settle and carry away portions of the dam, rendering the plaintiff's mill of no value, etc. The questions presented arise upon demurrer to the special plea of the defendant.

It is insisted on the part of the defense, that, independent of the special statute of 1852 mentioned in the plea, the only remedy the owner of land, mills and dams has for damage done by floating lumber, is that given by chapter 101 of the General Statutes. But this chapter obviously was not designed to limit the right to recover damages or restrict the remedy to what is there pre-

scribed. The provisions of that chapter relate only to lumber that floats and lodges upon the land or dam, giving the owner of the land or dam a right to retain the lumber, as a security for the damages, if it is not taken away by the owner of the lumber by the first day of May, and providing for the ultimate forfeiture of it in a certain contingency. The summary mode prescribed for assessing the damages, is for the purpose of enabling the owner of the lumber to redeem it by paying the damages by the time fixed by the statute for such payment to save the forfeiture. This remedy by forfeiture, applying only to cases of lumber lodging and remaining till after the first day of May, can not be construed as limiting the right to recover damages to those particular cases, and it is clear that the case made by the declaration, is not one to which this remedy by forfeiture applies.

But the defense principally relied on, is that set forth in the plea under the special statute of 1852, and the subsequent act extending it, which authorize the defendant to improve the channel of the river by removing obstructions, etc. The plea sets forth the substantial provisions of those statutes, and alleges that under them he made the improvements. The defendant admits in his plea that he has floated down lumber over the plaintiff's dam, it being within the limits of the grant in that act, and alleges a readiness to pay the damages thereby caused, if any, when assessed by a committee of the county court to be appointed under the second section of said act of 1852. The defendant's counsel insist that the remedy prescribed in that section, is exclusive, and hence that this action can not be maintained. That provision is, in substance, that all and every injury or damage which may be done by said Hall or his assigns to lands or property of any person *in carrying the object of the foregoing section into effect*, shall be paid by said Hall or his assigns, and that any person whose property may sustain *such* injury, may prefer a petition to the county court, and the court may, in their discretion, appoint a committee to view the premises and assess the damages, etc. The provision for recovering damages by petition to the county court, is in terms limited to injury and damage that may be done " *in carrying the object of the foregoing*" [the first] " *section*

*into effect.*" The first section empowers the defendant to enter upon the bed of the river between certain points specified, and dig, cleanse, and remove all obstructions from, the channel, bars and banks, etc., "for the purposes of widening, deepening and straightening Passumpsic River, and removing obstructions therefrom." There is no mention made in the first section of floating lumber. The object of the first section is the making of the improvements; and the provision in the second section for assessing damages done *in carrying the object of the first section into effect*, applies only to damages done in making the improvements, and not to such damages as may be done in the use of the river in floating lumber after the improvements are made. This is evident, from the fact that the second section provides for the floating of lumber after the improvements shall have been made, and for the taking of toll by the defendant. It is true the ultimate end to be accomplished by the whole act, probably was to facilitate the transportation of lumber upon the river; but the particular object of the first section was to provide for the improvements, and in this sense the word *object* was used in the second section. Had more been intended, a more comprehensive expression would have been used, at least by referring to the object of the whole act, instead of a reference to the object of the first section. Therefore the defendant's plea can not prevail upon any of the grounds relied on in argument.

We only decide that the plaintiff is not, either by reason of having a remedy under chapter 101 of the General Statutes, or on account of any provision for a different remedy under section 2 of the act of 1852, deprived of maintaining this action. No other questions have been argued. It is true the plea alleges that the defendant did no unnecessary damage, and it is urged by counsel that, on this account, the injury not being willful on the part of the defendant, the plaintiff has his remedy under said chapter 101, and that he was bound to resort to that. We do not decide what the rule of liability should be in this action, whether absolute, or only on the ground of negligence or imprudence, as the defendant in his plea admits his liability to pay the damages. We find no error in the judgment of the county court

adjudging the defendant's plea insufficient; and upon the pleadings the judgment should be affirmed; but, on the defendant's motion for liberty to replead, the judgment is reversed *pro forma*, and case remanded, and the defendant has leave to replead under the general rule as to costs, there being a stipulation to this effect in the exceptions.